John J. CUNEO, Regional Director of the Twenty-second Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD

v.

LOCAL NO. 825, INTERNATIONAL UNION OF OPERATING ENGINEERS, AFL–CIO, Respondent-Appellant.

No. 13731.

United States Court of Appeals Third Circuit.

Argued March 19, 1962.

Decided July 2, 1962.

---

Norman N. Schiff, Newark, N. J., (Schiff, Cummis & Kent, Newark, N. J. on the brief), for respondent-appellant.

Julius G. Serot, Washington, D. C. (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Winthrop A. Johns, Asst. Gen. Counsel, George Norman, Atty., National Labor Relations Board, on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

Appellant Engineers Union ("Engineers") appeals from a temporary injunction issued by the District Court in proceedings instituted by the Regional Director of the National Labor Relations Board ("Board") pursuant to Section 10 (*l*) of the National Labor Relations Act, as amended.[1] The temporary injunction restrained Engineers from engaging in unfair labor practices in violation of Section 8(b) (4) (i) (ii) (D) of the Act[2] until final adjudication by the Board of pending charges relating to such practices.

The District Court, in an oral opinion,[3] found that there was reasonable cause to

---

1. 29 U.S.C.A. § 160(*l*); 73 Stat. 544.

2. Section 8(b) (4) (D) of the Act, in pertinent part, provides:
   "(b) It shall be an unfair labor practice for a labor organization or its agents—
   * * * * *
   "(4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—
   * * * * *
   "(D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work * * *". 29 U.S.C.A. § 158(b) (4) (D).

3. It is regrettable that the District Court did not, as required by Rule 52(a), Fed. Rules Civ.Proc. "find the facts specially and state separately its conclusions of law thereon."

believe that Engineers had engaged in conduct "contrary to the provisions of Section 8(b)" and in its "Order Granting Temporary Injunction" restated that finding and made the further finding "that such acts and conduct will likely be repeated or continued unless enjoined."

The scope of our review on this appeal is limited to two considerations:[4]

(1) Was the District Court clearly erroneous under Rule 52(a) Fed.Rules Civ. Proc. 28 U.S.C.A., in its finding that Board had reasonable cause to believe that Engineers had engaged in an unfair labor practice or practices?; and

(2) Did the District Court abuse its judicial discretion in issuing the temporary injunction?

The facts as adduced by the testimony below and evidenced by the record may be summarized as follows:

Schwerman Company of Pennsylvania ("Schwerman") on June 19, 1961 filed a charge with John J. Cuneo, Regional Director of the Twenty-second Region of the National Labor Relations Board, which it amended on June 29, 1961, alleging that Engineers had engaged and was engaging in unfair labor practices proscribed by Section 8(b) (4) (i) (ii) (D) of the National Labor Relations Act ("Act"). Section 8 prohibits certain conduct in furtherance of jurisdictional disputes.

After investigation, the Regional Director concluded the charges had merit and warranted proceedings before Board and petitioned the District Court for the injunction now under review.

The hearing before the District Court developed this situation:

Selby Drilling Corporation ("Selby") had a subcontract for certain work on the Spruce Run Reservoir being constructed near Clinton, New Jersey, for the State of New Jersey. Selby purchased bulk cement for its operations from Universal Atlas Cement ("Atlas") and the latter contracted with Schwerman to deliver the cement to the project in motor trucks. The deliveries were made by tractor-trailer units to Selby's batching plant located at the job site. The cement was unloaded by means of compressed air generated by the tractor forcing it from the trailer unit into the bin or silo of the batching plant. The unloading operation involves the hook-up of the delivery pipe of the trailer to the receiving pipe which is attached to the bin; connection of the air hose between the tractor which operates the compressor and the trailer (which contains the cement); starting and regulation of the tractor motor; the build-up and maintenance of proper air pressure to the cement compartment on the trailer; and the operation of the delivery valves.

The testimony discloses that Schwerman made several deliveries of cement in May, 1961 and that the unloading was then performed by members of Engineers, under instructions of one of Selby's supervisory employees. After a "few loads" deliveries were stopped due to a job shutdown and then resumed on June 8, 1961. At that time Schwerman learned that Engineers' members had been doing the unloading and instructed its drivers "under no circumstances to allow anyone else to unload the truck".

On June 9, 1961 when a tractor-trailer unit of Schwerman arrived at the project site, one Czyz, a member of Engineers, attempted to unload the cement cargo and was told by Schwerman's driver, Heilman, that he was not to do so and that he, Heilman, would unload. At that juncture another member of Engineers told Heilman "If we don't unload it, nobody unloads it * * * take it out of here". One Gatti, Engineers' steward on the job, then present, told Heilman the unloading job "was Engineers' work." Heilman, after consulting by phone with Schwerman's Terminal Manager Wilson, his superior, drove the tractor-trailer, loaded, from the project site.

4. Cuneo, etc. v. Local 825, International Union of Operating Engineers, AFL-CIO et al., 300 F.2d 832 (3 Cir. 1962).

On June 12, 1961, Wilson accompanied Schwerman's tractor-trailer to the project. Gatti then told Wilson and his driver that unloading was the "job" of Engineers. Wilson, in reply, said the "job" was that of its drivers, members of Local No. 773, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("Teamsters"). After a delay of an hour and a half during which Gatti conferred with Selby's supervisor, Wilson was advised that his driver could proceed to unload. Two deliveries were made the following day, June 13th, with the unloading performed by Schwerman's drivers.

On June 14th Engineers' men again prevented unloading of a cement cargo. No further deliveries were attempted to June 19th when Schwerman sent two separate tractor-trailer units with loads to the project under supervision of Wilson and two fellow supervisory officials. At that time Gatti and two other members of Engineers physically blocked the attempts of a Schwerman driver to unload his cargo. A "heated argument" ensued between the Engineers and Teamsters men during which Gatti said "If you get the cement into the bin it will rot there because we won't touch it." Engineers operated the batching bins. After a 15 to 30 minute verbal set-to Schwerman's men agreed under protest to divide up the unloading job with Engineers in a manner not here pertinent. One of Schwerman's drivers protested and said he was going to take up the matter with the Board because "They are taking my work away from me."

The original charge with the Board was filed by Schwerman the same day. Deliveries to the project continued under the foregoing arrangement until the issuance of the injunction herein on July 7, 1961.

It was on the basis of the foregoing events that the District Court found "reasonable cause" to believe that Engineers had "used self-help and made these moves, restraining acts" for the "purpose of having this work assigned to [its] organization and taken away from [Teamsters]", and that there was accordingly "reasonable cause" to believe that Engineers' conduct violated Section 8(b) (4) (D).

On this appeal Engineers urged (1) there did not exist a "jurisdictional dispute" between it and Teamsters and accordingly there was no basis for the application of Section 8(b) (4) (D); and (2) the issuance of that temporary injunction was in error under the factual situation in this case.

■ On review of the record we cannot say that the District Court was "clearly erroneous" in its fact-finding that there was "reasonable cause" to believe that Engineers engaged in acts and conduct in violation of Section 8(b) (4) (D). Nor can we say that the District Court abused its discretion in issuing the temporary injunction under the evidence earlier recited.

■ Since the scope of our review "is limited to a determination whether the District Court's finding that there is reasonable cause to believe that a violation of the Act as charged has been committed is clearly erroneous and whether the District Court abused its discretion in granting injunctive relief",[5] further consideration becomes unnecessary. The cases cited by Engineers are inapposite on their facts.

For the reasons stated the Order Granting Temporary Injunction will be affirmed.

Judge GOODRICH participated in the consideration of this case but died prior to the filing of this opinion.

5. Cuneo, etc. v. Local 825, International Union of Operating Engineers, AFL-CIO et al., supra, note 4, and Schauffler, etc. v. Local 1291, International Longshoremen's Association, 3 Cir., 292 F.2d 182, 187 (1961).